## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

**DAMIEN A. SUBLETT**                                                      **PLAINTIFF**

**v.**                                            **CIVIL ACTION NO. 5:15-CV-P199-TBR**

**MARLENE T. SHEETS** *et. al.*                                       **DEFENDANTS**

### MEMORANDUM OPINION

This is a *pro se* civil rights action brought by a convicted prisoner pursuant to 42 U.S.C.

§ 1983.  The Court has granted Plaintiff leave to proceed *in forma pauperis*.  This matter is

before the Court for screening of Plaintiff's two supplemental complaints (DNs 8 & 9) pursuant

to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on*

*other grounds by Jones v. Bock*, 594 U.S. 199 (2007).  For the reasons set forth below, the action

will be allowed to continue.

### I. PROCEDURAL HISTORY

Plaintiff filed his original complaint on September 14, 2015.  In his complaint, he alleged

that Defendant Kentucky State Penitentiary (KSP) Correctional Officer Marlene Sheets had

retaliated against him for filing a grievance against her by filing a disciplinary report against him.

On initial review, the Court determined that Plaintiff's complaint should be dismissed for failure

to state a claim, in accordance with *Jackson v. Madery*, 158 F. App'x 656 (6th Cir. 2005),

because Plaintiff had  submitted documents with his complaint which showed that he had been

found guilty of the misconduct set forth in Defendant Sheet's disciplinary report.  (DN 6,

Memorandum Opinion).  Accordingly, the Court entered an order dismissing the case on

December 16, 2015.  (DN 7).

On December 29, 2015, and January 4, 2016, Plaintiff filed motions for leave to supplement his complaint. By Order entered this date, the Court construed the first as a motion to reopen the action, which it granted, and then granted both of Plaintiff's motions for leave to supplement his original complaint. It is these two supplemental complaints which are now before the Court for initial review.

## II. SUMMARY OF SUPPLEMENTAL COMPLAINTS

In Plaintiff's first supplemental complaint, Plaintiff adds KSP Correctional Officer Laura S. Delaney and KSP Nurse Kaci Simmons as Defendants in this action and sues them in their individual capacities only. Plaintiff also re-states his allegations against Defendant Sheets. In Plaintiff's second supplemental complaint, Plaintiff makes more specific allegations against Defendant Simmons and corrects the spelling of her name.

### A.  Defendant KSP Correctional Officers Sheets

In his first supplemental complaint, Plaintiff re-alleges the facts surrounding his claim that Defendant Sheets retaliated against him for filing a grievance against her. He again alleges that on August 3, 2015, Defendant Sheets looked over a privacy screen and observed him urinating in his cell. Plaintiff alleges that Defendant Sheets was "directly and clearly" staring at his penis. Plaintiff states that he filed a grievance against Defendant Sheets for this act on August 4, 2015. He further reports that on August 5, 2015, Defendant Sheets told him that she had received a copy of his grievance and that "since [Plaintiff] had filed a grievance against her, she was going to write [him] up and stop his grievance from being filed." Plaintiff further alleges that Defendant Sheets then proceeded to issue a disciplinary report against him on that same date which stated that Plaintiff had been yelling about a "PREA" complaint on August 3, 2015, and that this conduct distracted her from her job duties. Plaintiff alleges that his grievance

was initially processed to the "informal resolution" stage because he had no disciplinary reports pending at the time it was filed.  However, Plaintiff then received a response to his grievance on August 6, 2015, which stated that because a disciplinary report was filed on the incident set forth in the grievance, the incident was "non-grievable . . . pending an Adjustment Committee decision."

Plaintiff next alleges that on August 14, 2015, he filed a grievance claiming the disciplinary report filed by Defendant Sheets was only filed in retaliation for his initial grievance against her and requesting that said disciplinary report be dismissed for this reason.  He then reports that on August 17, 2015, he received a Grievance Rejection Notice which stated as follows:  "Your action requested to dismiss Disciplinary Report can only be granted through the Adjustment Committee process. . ."

Finally, Plaintiff alleges that as a result of the disciplinary report, he was charged with "making threatening or intimidating statements" and that on September 1, 2015, following a hearing, he was found guilty of "interfering with an employee in the performance of his duty" and received a penalty of "15 days D/S suspended for 90 days."  Plaintiff states that he appealed this decision to the KSP Warden but that his appeal was denied.

### B.   Defendant KSP Correctional Officer Delaney

In his first supplemental complaint, Plaintiff alleges that Defendant Delaney also retaliated against him by filing a "false disciplinary report" against him for inappropriate sexual behavior.

More specifically, Plaintiff alleges that on November 10, 2015, Defendant Delaney looked into Plaintiff's cell while he was working on legal documents related to the instant § 1983 action against her friend, Defendant Sheets.  Plaintiff alleges that Defendant Delaney pulled the

order from his desk in which the Court granted him *in forma pauperis* status in this case and learned from the caption that he had filed an action against Defendant Sheets.  He alleges that Defendant Delaney then stated, "You're the reason they took Marlene off this shift and placed her on day shift, first shift.  You filed a grievance against her for looking at your pecker."  He says that Defendant Delaney then asked, "What's the lawsuit for, you can't sue for just looking at your pecker, it not gold."  Plaintiff contends that Defendant Delaney then said: "You need to let that lawsuit stuff go or find yourself in 3 c/h for another three years, I can put you there." According to Plaintiff, on that same night, he was standing up urinating in his cell when Defendant Delaney walked up to his cell "with a medical sick call form and stuck it through the bars."  Plaintiff then informed Defendant Delaney that he did not request a sick call form and asked  Defendant Delaney to stop looking at him while he was urinating and told her "[your] action is a PREA."  According to Plaintiff, Defendant Delaney then stated, "You can't sue me, your an inmate and that with Marlene [Sheets] is bullshit."  Plaintiff states that he then told Defendant Delaney that he was going to speak with a supervisor.  According to Plaintiff, approximately 15 minutes later, another officer came to cell and told him to "turn around and cuff up."  Plaintiff stated that he was then taken to "SMU 3 c/h" and ultimately received a disciplinary report from Defendant Delaney stating that Plaintiff "was lying in his bed masturbating."

According to Plaintiff, during the investigation, he reported that he had not been masturbating but was only using the restroom at the time of the incident.  Plaintiff also made this statement to the Adjustment Committee.  However, the Adjustment Committee ultimately found Plaintiff guilty and "issued a penalty of 45 days seg time."  Plaintiff alleges that he appealed this decision to the Warden at KSP but that his appeal was denied.

Plaintiff alleges that Defendant Delaney filed the disciplinary report against him in retaliation for filing this § 1983 action against Defendant Sheets.

### C.  Defendant KSP Nurse Simmons

In his first supplemental complaint, Plaintiff alleges that on December 16, 2015, while housed in "SMU 3 c/h," Plaintiff was getting ready to take a shower.  He alleges that the shower in the Special Management Unit (SMU) is made of open bars so that the security staff can observe an inmate showering.  Plaintiff alleges that Defendant Simmons was about to begin her "pill call on the walks" at this time and asked another officer whether Plaintiff was about to take a shower.  Plaintiff alleges that the officer answered Defendant Simmons in the affirmative and that that Defendant Simmons then looked at Plaintiff and said "Showtime."  According to Plaintiff, Defendant Simmons then began her pill distribution along the walk.  Plaintiff alleges that at some point Defendant Simmons "pushed her cart up in front of the shower in clear view of Plaintiff's naked body.  At this time, Plaintiff was still naked in the shower was drying his genital area with a towel.  Plaintiff alleges that Defendant Simmons watched him dry himself "for a full five minutes."  Plaintiff states that he then informed Defendant Simmons that what she had done "is a PREA."  Plaintiff states that another officer then came to Plaintiff's cell and began a Prison Rape Elimination Act investigation for "voyeurism."

In Plaintiff's second supplemental complaint, he states that Defendant Simmons said, "[Plaintiff] was jacking off, that way, you can't claim PREA on me."  He said that Defendant Simmons then stated that "she has to observe all the inmates whether naked or clothed because the Special Management Unit requires such visual observation."

Plaintiff alleges that Defendant Simmons has observed him showering six times during the months of November and December 2015.

### III. LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A.  Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  However, while liberal, this standard of review does require more than the bare assertion of legal conclusions.  *See Columbia Natural Res., Inc.* v. *Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979),

or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## IV. ANALYSIS

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a § 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Retaliation Claims against Defendants Sheets and Delaney

As set forth above, Plaintiff claims that Defendant Sheets issued a disciplinary report against him in retaliation for filing a grievance against her and that Defendant Delaney issued a disciplinary report against him in retaliation for filing this § 1983 action against Defendant Sheets.

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in

part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.

1999). The plaintiff has the burden of proof regarding all three elements. *See, e.g.*, *Murray v.*

*Evert*, 84 F. App'x 553, 556 (6th Cir. 2003); *Green v. Tudor*, 685 F. Supp. 2d 678, 692 (W.D.

Mich. 2010). Moreover, the plaintiff must prove that the exercise of the protected right was a

substantial or motivating factor in the defendant's alleged retaliatory conduct. *Mount Healthy*

*City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Smith v. Campbell*, 250 F.3d

1032, 1037 (6th Cir. 2001). If the plaintiff makes such a showing, the defendants may still avoid

liability by showing "that [they] would have taken the same action in the absence of the

protected activity." *Whiteside v. Parrish*, 387 F. App'x 608, 612 (6th Cir. 2010) (quoting

*Thaddeus-X*, 175 F.3d at 399); *Jones v. Smolinski*, No. 1:09-CV-633, 2010 U.S. Dist. LEXIS

143638 (W.D. Mich. Aug. 31, 2010).

At the outset of its analysis, the Court again notes that it dismissed Plaintiff's original

complaint against Defendant Sheets based upon the holding in *Jackson v. Madery*. In that case,

the Sixth Circuit held that held that a plaintiff who complains that the adverse action taken

against him was a substantiated misconduct charge fails to state a retaliation claim. *Id*. at 662.

The *Madery* court went on to explain that this is because "a finding of guilt upon some evidence

of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Id*. (citing

*Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). Another district court has noted that the

Sixth Circuit has upheld this rule in 16 unpublished opinions. *Annabel v. Frost*, No. 14-10244,

2015 U.S. Dist. LEXIS 40524, at *11-12.

However, upon further review of Plaintiff's retaliation claims, the Court discovered that

there is also one published case in the Sixth Circuit which seems to hold that a substantiated

misconduct charge does not necessarily "checkmate" a retaliation claim, especially at the

dismissal stage. *Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). The *Thomas* court reasoned that even if there is evidence of a substantiated misconduct charge, the plaintiff may still be able to prove, after discovery, that a plaintiff's protected conduct was "a motivating factor" behind a defendant's decision to file a disciplinary report, and the defendant may be unable to meet her burden to "show that she would have taken the same action in the absence of the protected activity." *Id*. *But see Annabel v. Frost*, at *13 (holding that *Thomas* is no longer good law to the extent that it holds that the "checkmate" rule can never be applied at the pleading stage because it predates the pleading standard set forth in *Twombly*).

In light of T*homas*, the Court will allow Plaintiff's retaliation claims against Defendants Sheets and Delaney to proceed at this juncture. Assuming the truthfulness of Plaintiff's claims, and construing the claims in his favor, as the Court must do at this time, the Court concludes that he has arguably established a *prima facie* retaliation claim.

**B. "Bodily Privacy" Claim against Defendant Simmons**

In his supplemental complaints, Plaintiff alleges that Defendant Simmons violated his right to "bodily privacy" under the Fourth Amendment.

"Neither the Supreme Court nor the Sixth Circuit has ever expressly recognized that the fourth amendment 'right to privacy' encompasses the right to shield one's naked body from view by members of the opposite sex." *Kent v. Johnson*, 821 F.2d 1220, 1226 (6th Cir. 1987). The Sixth Circuit agrees with other circuits "in recognizing that a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less

than those enjoyed by non-prisoners." *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992). "Couched in fourth amendment terms, the inquiry becomes whether plaintiff has a reasonable expectation of privacy from such 'searches.'" *Kent v. Johnson*, 821 F.2d at 1226.

In *Kent v. Johnson*, the Sixth Circuit found a constitutional violation where "women guards were permitted and required to observe [the inmate] performing necessary bodily functions in his cell and while showering." *Id.* at 1224.  However, the Sixth Circuit later held that accidental viewing of a prisoner's naked body by a prison guard of the opposite sex is not a constitutional violation.  *Mills v. City of Barbourville*, 389 F.3d 568 (6th Cir. 2004).  In *Mills* the Sixth Circuit distinguished that case from *Kent* on the basis that "*Kent* involved prison policies that subjected inmates to *routine* searches or viewing by guards of the opposite sex." *Id.* at 579. Of interest in *Mills*, in addressing a claim brought against one of the opposite sex defendants for intentionally looking at her while in the shower, the Sixth Circuit stated that "[i]f plaintiff can demonstrate that [defendant] planned or intended to see her during the search, he would not be entitled to qualified immunity." *Id.*

Upon consideration, the Court will allow the privacy claim to proceed against Defendant Simmons.

## V. CONCLUSION

For the foregoing reasons, the Court will allow Plaintiff's claims to proceed.  The Court will enter a separate Scheduling Order to govern the development of Plaintiff's claims.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.011