UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00199-TBR

DAMIEN A. SUBLETT                                                      PLAINTIFF

v.

MARLENE T. SHEETS, *et al.*                                          DEFENDANTS

## Memorandum Opinion and Order

Plaintiff Damien Sublett, *pro se*, is a prisoner currently housed at the Western Kentucky Correctional Complex. He alleges that during a previous period of incarceration at the Kentucky State Penitentiary (KSP), Marlene Sheets, a female KSP correctional officer, inappropriately viewed his genitals while he was urinating. After Sublett filed a grievance regarding this event, he alleges Sheets retaliated by filing a disciplinary report against him for interfering with Sheets' official duties – a charge that prison officials later upheld. This suit followed. During its pendency, Sublett claims another female officer, Laura Delaney, threatened him and filed a disciplinary report against him in retaliation for his suit against Sheets. Delaney's disciplinary report, alleging Sublett was masturbating in her view, was also upheld. Sublett then added Delaney and a third defendant, KSP nurse Kaci Simmons, as defendants.

To ultimately prevail on his retaliation claims, Sublett must prove that he engaged in protected conduct and that Defendants then subjected him to an adverse action because of that conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Sublett alleges that both Sheets and Delaney retaliated against him by

filing disciplinary reports that were ultimately sustained by the prison's Adjustment Committee. Although Sublett presents a genuine issue of material fact on the elements of protected conduct and adverse action, he brings forth no evidence that Sheets possessed a retaliatory motive in filing her report. Defendant Sheets is therefore entitled to summary judgment. However, as to Defendant Delaney, Sublett submits the sworn statements of two fellow inmates, each suggesting that Delaney did indeed retaliate against Sublett by filing a disciplinary report. His claim against Delaney must be decided by a jury.

## I. Facts and Procedural History

In late 2015, Plaintiff Damien Sublett was a prisoner at the Kentucky State Penitentiary in Eddyville, Kentucky. He alleges that on August 3, 2015, Defendant Marlene Sheets was making her rounds on 5 cell house, where Sublett was housed. [DN 8-1 at 2.][1] Sublett had a privacy screen affixed to his cell bars that extended about four-and-a-half feet above the floor. [*Id.*] According to Sublett, when Sheets passed by his cell, Sublett was in the process of urinating. [*Id.*] When Sublett looked up, he claims Sheets was "directly and clearing" staring at his penis. [*Id.*] Realizing Sublett saw her looking at his genitals, Sheets began to walk away. [*Id.*] Sublett told Sheets her actions were a violation of the Prison Rape Elimination Act (PREA) and said he would like to speak to a supervisor. [*Id.*]

Sheets' version of events differs. Via affidavit, Sheets denies that she ever looked over the privacy screen into Sublett's cell. [DN 58-2 at 2.] Rather, she states that while she was making her rounds, she caught another inmate

---

[1] Sublett's allegations are taken from his verified supplemental complaints and his affidavits.

masturbating. [*Id.* at 1.] When she ordered the inmate to approach the bars to be handcuffed, Sheets claims Sublett "began yelling 'PREA, you're not supposed to look in cells, you need off the walk.'" [*Id.* at 1-2.] Sheets says Sublett's yelling "created a dangerous situation" because it divided her attention between Sublett and the inmate she was attempting to handcuff. [*Id.* at 2.]

In any event, the parties agree that shortly thereafter, Sergeant Kerwin Walston came to talk to Sublett and asked him if he would like to file a PREA complaint. [DN 8-1 at 3; DN 58-2 at 2.] Sublett said no, but told Walston he intended to file a grievance against Sheets. [DN 8-1 at 3; DN 58-2 at 2.] Sheets admits she knew Sublett intended to file a grievance. [DN 58-2 at 2.]

Sublett followed through and filed a grievance the next day, August 4. His grievance states that Sheets made an unannounced round and watched him urinate, violating his privacy rights. *See* [DN 48-3 at 2-3.] As relief, Sublett asked "[n]ot to be retaliated against for filing this grievance, i.e., false disciplinary reports, unreasonable searches, harassment . . . and to allow Mr. Sublett to exercise his right to privacy in his cell without routine observation of female staff." [*Id.* at 2.]

Sublett's grievance was rejected because Sheets filed a disciplinary report against Sublett regarding the August 3 incident, s*ee* [*id.* at 4], and KSP inmates are not allowed to pursue grievances regarding matters that are the subject of disciplinary reports. The parties dispute when Sheets filed her report. Sublett claims that Sheets filed it on August 5, the day after Sublett filed his grievance.

[DN 8-1 at 5.] Indeed, the report states that it was submitted on "08/05/2015 at 08:19:16 PM." [DN 48-2 at 2.] However, Sheets explains that "[d]isciplinary reports frequently take more than one day to be officially filed as each must be reviewed by a supervisor." [DN 58-2 at 2.] She says that she filled out her report against Sublett on August 3, but it was not finalized until August 5. [*Id.*] Sheets' account seems to be corroborated by Captain Jeffrey Hope's notation on Sublett's grievance, stating that "[a] disciplinary report was filed on this incident on 8/3/2015." [DN 48-3 at 2.]

In her report, Sheets alleged that Sublett

> began yelling down C/D walk on 1st floor "Prea, you're not supposed to look in cells, you need off the walk". Inmate Sublett stopped when Sergeant Kerwin Walston asked if inmate Sublett was filing a prea on Officer Sheets. Inmate Sublett told Sgt. Walston no he wasn't but he was filing a Grievance. This Incident took place in front of several inmates and distracted me, Officer Sheets from my job duties.

[DN 48-2 at 2 (sic throughout).] After Sheets filed her report, Sublett filed a second grievance on August 14. There, Sublett alleged that Sheets filed her disciplinary report against Sublett in retaliation for his August 4 grievance against Sheets. [DN 48-3 at 6.] Like his first grievance, Sublett's August 14 grievance was rejected because the incident was already the subject of a disciplinary report. [*Id.* at 7.]

The Adjustment Committee, the KSP body in charge of adjudicating discipline reports, held a hearing on September 1. It found Sublett "guilty of . . . [i]nterfering with an employee [in] the performance of [her] duty." [DN 58-4 at 2.] The Committee rejected Sublett's statement that he had no idea a female guard was

on the walk, noting that the log book reflected that Sheets' presence was announced to the inmates at the start of her shift. [*Id.*] However, it does not appear that the Committee offered an opinion regarding Sublett's allegation that Sheets inappropriately watched him urinate. The Committee imposed a penalty of fifteen days in disciplinary segregation, suspended for ninety days. [*Id.*] Sublett appealed the Committee's decision to Warden Randy White, who upheld the Committee's findings. [*Id.* at 4.]

This suit followed on September 14. In his original complaint, Sublett alleged that by filing a disciplinary report, Sheets unlawfully retaliated against him for exercising his First Amendment right to file a grievance against her. *See* [DN 1.] Sublett alleges that Defendant Laura Delaney retaliated against him for filing that suit. While working on legal papers for his suit against Sheets on the afternoon of November 10, Sublett claims that Delaney walked by his cell while making her rounds. [DN 8-1 at 19.] He says that Delaney looked in his cell, saw a paper with the caption "<u>Damien A. Sublett v. Marlene S. Sheets</u>," reached through the bars, and grabbed it. [*Id.*] According to Sublett, "Delaney then stated, 'your the reason, they took Marlene off this shift and placed her on day shift, first shift. Your, filed a grievance against her for looking at your Pecker. . . . What's the law suit for, you can't sue for just looking at your pecker, it not gold.'" [*Id.* (sic throughout).] After Sublett objected, Delaney continued, "You don't have any right unless there given to you by me, you gotta be queer to not [want] a lady to see your

Dick. . . . [Y]ou need to let that Lawsuit stuff go or find your self in 3 c/h for another three years, I can put you there." [*Id.* (sic throughout).]

Later that night, Sublett claims Delaney approached his cell once again, this time while he was urinating. [*Id.*] He says Delaney tried to hand him a medical sick call form, even though he had not previously requested one. [*Id.*] Sublett asked Delaney to stop watching him while he urinated and told her that she was violating the PREA. [*Id.* at 19-20.] Delaney walked away, but came back a short time later and stated, "you can't sue me you're an inmate and that with Marlene is bull shit." [*Id.* at 20 (sic throughout).] After this third encounter, Sublett told Delaney he wished to speak to a supervisor. [*Id.*] Fifteen minutes later, Lieutenant Mitch McLead came to Sublett's cell, cuffed him, and took him to 3 cell house based upon Delaney's allegation that she saw Sublett masturbating. [*Id.*]

On the subject of his November 10 interactions with Delaney, Sublett submits the sworn declaration of fellow inmate Carlos Thurman. *See* [DN 48-3 at 13.] Although Thurman states the incident occurred on November 11, he corroborates the remainder of Sublett's account. Thurman says at the time, he was housed in a cell directly across the walk from Sublett. [*Id.*] He claims he heard Delaney ask Sublett about the grievance he filed against Sheets, watched her grab the legal papers from Sublett's cell, and heard her say "your suieing Marlene for looking at your Dick." [*Id.* (sic throughout).] Delaney then told Sublett "to let the law suit go, and that she could easily send Sublett to 3 cell house segregation." [*Id.*

at 13-14 (sic throughout).]   Thurman also claims he saw Delaney look at Sublett while Sublett was urinating later that evening.   [*Id.* at 14.]

Delaney filed a disciplinary report following the November 10 incident.   In it, Delaney alleged that while she "was making [her] final round on the 5 Cellhouse 2nd Floor A&B Walk[,] Inmate Damien Sublett # 134575 in B-10 was laying on his bunk with his penis out masturbating above his waist band."   [DN 58-5 at 2.] Although Sublett submitted a written statement to the Adjustment Committee stating that he was urinating, not masturbating, at the time of the incident, the Committee rejected his account and found him guilty of "inappropriate sexual behavior." [*Id.*] The Committee imposed a penalty of forty-five days in disciplinary segregation, and the warden upheld the committee's decision on appeal. [*Id.* at 2-4.]

Sublett claims that Delaney filed her disciplinary report against him in retaliation for his suit against Sheets.   He bases his claim in part upon the sworn declaration of fellow inmate Michael Cooper.   *See* [DN 48-3 at 18-19.]   Cooper alleges that "Delaney permits inmate's [sic] to masturbate as a matter of voyeurism."   [*Id.* at 18.]   He states that before he showers, Delaney watches him masturbate, and that she has watched over forty other inmates in secure housing do the same.   [*Id.* at 19.]   Finally, Cooper states Delaney has never issued him a disciplinary report for masturbating, and she informed him "the only way she would stop and/or wright me a Disciplinary report [is] if staff got suspicious[,] if I masturbated were others might see[,] or filed a grievance against females working

the walk or a Prison Rape Elimination Act Grievance." [*Id.* (sic throughout).] According to Sublett, Cooper's declaration shows that Delaney's disciplinary report against Sublett was retaliatory, because Delaney regularly sees other inmates masturbating but does not report them.

The Court allowed Sublett to submit a supplemental complaint, adding Delaney and KSP nurse Kaci Simmons as parties.[2] Following discovery, Sublett filed a motion for summary judgment against Sheets and Delaney, [DN 48], to which they responded, [DN 57]. Sublett did not reply. Sheets and Delaney then filed a combined summary judgment motion. [DN 58.] Sublett responded, [DN 60], and Sheets and Delaney replied, [DN 62]. Fully briefed, these motions are ripe for adjudication.

## II. Standard of Review

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726

---

[2] Sublett alleges Simmons, a female, watched Sublett dry his genitals after showering. Although Simmons appears to have been served, *see* [DN 24], she has not appeared in this action. Sublett has moved for an entry of default and default judgment against Simmons. [DN 37; DN 38.] Sublett's claim against Simmons is not relevant to the resolution of the summary judgment motions.

(6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

When the parties have filed competing motions for summary judgment, as is the case here, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Hensley v. Grassman*, 693 F.3d 681, 686 (6th Cir. 2012) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)). The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## III. Discussion

### A. Defendants' Motion for Summary Judgment

Currently before the Court are Sublett's § 1983 retaliation claims against Defendants Sheets and Delaney. To prevail, Sublett must prove:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The Court will address each element in turn with respect to both Sheets and Delaney.

### (1) *Protected Conduct*

First, Sublett must show that he engaged in protected conduct. A prisoner possesses the "undisputed First Amendment right to file grievances against prison officials on his own behalf." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Similarly, "[i]nmates have a constitutional right of access to the courts to challenge prison conditions." *King v. Zamiara*, 150 F. App'x 485, 492 (6th Cir. 2005) (cutting *Thaddeus-Z*, 175 F.3d at 391)). However, an inmate's right to file grievances and lawsuits does not extend to frivolous claims. *Hill*, 630 F.3d at 472; *see also Lewis v. Casey*, 518 U.S. 343, 353 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of [Rule] 11 sanctions."). With respect to his claim against Sheets, Sublett asserts he engaged in protected conduct by filing a grievance against her, in which he alleged Sheets

10

looked at his genitals inappropriately. With respect to Delaney, Sublett claims he engaged in protected conduct by filing a lawsuit against Sheets for retaliating against him.

Defendants argue Sublett did not engage in protected conduct because both his grievance and his original lawsuit against Sheets were frivolous. Particularly, Defendant Sheets claims Sublett's grievance against her was frivolous because the Adjustment Committee found Sublett guilty of the misconduct she alleged. The Court disagrees.

A prisoner's complaints against prison officials are frivolous when they "lack[] an arguable basis either in law or fact." *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). In turn, "[a] complaint lacks an arguable basis in law or fact if it . . . is based on legal theories that are indisputably meritless." *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000) (citing *Neitzke*, 490 U.S. at 327-28). Here, Sublett attests via multiple sworn statements that Sheets watched him urinate on August 3, 2015 – the incident giving rise to his grievance against her the next day. What's more, it does not appear that any prison official ever concluded that Sheets did not look at Sublett's genitals, because no official ever ruled upon Sublett's grievance. Instead, Sublett's grievance was rejected pursuant to KSP regulations that prevent inmates from submitting grievances that are the subject of a disciplinary report. When the Adjustment Committee reviewed the disciplinary report issued by Sheets, it simply found Sublett "guilty of . . . [i]nterfering with an employee [in] the performance of

his duty." [DN 58-4 at 2.] The Committee did not pass upon whether Sheets looked at Sublett's genitals while he was urinating. For her part, Sheets denies that she did so. But Sheets' competing affidavit alone is an insufficient basis for this Court to conclude that Sublett's grievance lacked an arguable basis in law or fact. Because that grievance forms the basis of Sublett's retaliation claim against Sheets, she has failed to show the absence of a genuine dispute of material fact on the first element, protected conduct.

As to Defendant Delaney, Sublett alleges his first complaint filed in this action constitutes the protected conduct for which Delaney retaliated against him. Delaney argues that this Court has already determined Sublett's original complaint against Sheets was frivolous, meaning that Sublett cannot establish the first element of his retaliation claim. However, the Court's earlier dismissal of Sublett's complaint was based upon its own misunderstanding of the checkmate rule, not upon any factual inadequacies contained in Sublett's complaint. *See* [DN 6 at 4-5.] Discussed in greater detail below, the checkmate rule directs that "a finding of guilt upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 F. App'x 656, 665 (6th Cir. 2005) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). Upon initial screening of Sublett's supplemental complaint, the Court called its earlier conclusion into doubt, recognizing "there is . . . one published case in the Sixth Circuit which seems to hold that a substantiated misconduct charge does not necessarily 'checkmate' a retaliation claim, especially at the dismissal stage." [DN 13 at 8-9] (citing *Thomas*

*v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007)). Based upon *Thomas*, the Court allowed Sublett's claims against Sheets, Delaney, and Simmons to go forward.

If the Court had applied the correct formulation of the checkmate rule upon initial screening of Sublett's first complaint, it would likely have allowed his claim against Sheets to go forward. Delaney does not present to the Court any other reason that Sublett's first complaint should be considered frivolous. Accordingly, she too has failed to undercut the "protected conduct" element of Sublett's retaliation claim against her.

(2) *Adverse Action*

Next, Sublett must show "an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. The Sixth Circuit has found that a variety of actions by prison officials may constitute adverse action: "initiating a retaliatory transfer to another prison when it will result in foreseeable negative consequences to the prisoner, threatening to impose disciplinary sanctions, issuing major misconduct reports that could result in loss of disciplinary credits, and threatening the use of physical force." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011) (internal citations omitted). At the summary judgment stage, "the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005).

As noted above, Sublett received two disciplinary reports, both of which were substantiated by the Adjustment Committee. For interfering with Sheets' official duties, the Committee sentenced Sublett to fifteen days in disciplinary segregation, suspended for ninety days. And for engaging in inappropriate sexual behavior, Sublett received forty-five days in disciplinary segregation. KSP regulations define "disciplinary segregation" as "the segregation or confinement of an inmate for the general population or special management population in an individual cell for a specific period of time." [DN 58-3 at 2.] Inmates placed in disciplinary segregation are subject to more frequent observation by prison staff, limited purchases from the prison canteen, and limited telephone privileges. *See* [*id.* at 3, 9, 10.] Further, inmates who are charged with "major violations," as Sublett was on both occasions, may lose good time credit. *See* [DN 48-2 at 32.] The Court believes that a reasonable jury could conclude that the penalty of disciplinary segregation would deter a person from exercising his First Amendment right to file non-frivolous grievances and lawsuits against prison officials. *See Thomas*, 481 F.3d at 441; *Gibbs v. Hopkins*, 10 F.3d 373 (6th Cir. 1993) (prisoner made out retaliation claim after being housed in administrative segregation). Similarly, the Sixth Circuit has recognized "that the mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation." *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004). Delaney's threats to have Sublett placed in segregated housing, if proven, could also constitute adverse action.

(3) *Causation*

Finally, Sublett must show that Sheets' and Delaney's "adverse action[s] [were] motivated at least in party by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394. On summary judgment, the Court must "analyze the causation element . . . under the burden-shifting framework announced in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977)." *Thomas*, 481 F.3d at 441. Pursuant to *Mount Healthy*, "[a]fter a plaintiff shows that his protected conduct was a motivating factor in the defendant's action, the defendant may thwart the retaliation claim by showing that it would have taken the same action even without the protected activity." *Id.* at 441-42 (citation omitted).

The causation element poses the largest obstacle to Sublett's retaliation claims. A multitude of unpublished Sixth Circuit cases have adopted the "checkmate rule," whereby "a proven infraction of prison rules will generally satisfy the defendant's burden" to demonstrate it would have taken the same disciplinary action anyway. *Id.* at 442; *see Annabel v. Frost*, No. 14-10244, 2016 WL 270294, at *4 (E.D. Mich. Jan. 22, 2016) (listing cases). However, the Sixth Circuit also suggested in *Thomas v. Eby*, a published case, that the checkmate rule is not so cut-and-dry.

In *Thomas*, as in the instant case, the plaintiff alleged a female prison guard filed a misconduct report against him for masturbating, in retaliation for his earlier grievance against another guard. *Thomas*, 481 F.3d at 436. The district court dismissed the plaintiff's complaint *sua sponte* under the habeas exception to § 1983,

because the defendant's report led to the plaintiff's loss of good time credit. *Id.* at

437. The Sixth Circuit reversed, holding that the habeas exception did not apply in

that scenario, because "credits do not determine when a sentence expires or is

complete, but only when a prisoner is subject to parole or discharge." *Id.* at 440

(quoting *Ryan v. Dep't of Corr.*, 672 N.W.2d 535, 541 (Mich. Ct. App. 2003)). On

appeal, the defendant also argued that "the administrative determination that [the

plaintiff] actually committed the sexual misconduct precludes him from being able

to establish retaliation." *Id.* at 441. But the *Thomas* court rejected that

argument, at least in part:

> However, MDOC cites no case applying the *Mount Healthy* standard
> on a motion to dismiss, and for good reason—it makes little sense to
> apply it at the pleading stage. A complaint cannot be dismissed
> unless "the plaintiff can prove *no set of facts*" that would entitle him to
> relief. *Brown,* 207 F.3d 863, 867 (6th Cir. 2000) (emphasis added).
> Here, Thomas could establish multiple sets of facts that would prove
> his § 1983 claim. For example, it is possible that after discovery,
> Thomas would be able to demonstrate that inmates regularly expose
> their genitals to guards without consequence. Or perhaps he could
> prove that he had exposed himself to Eby in the past, but she had
> never pursued disciplinary action until after he filed a grievance
> against another guard. In either of these cases, Thomas would be able
> to show that his filing a grievance was "a motivating factor" behind the
> misconduct ticket. *Thaddeus-X,* 175 F.3d at 399. And Eby likely
> would be unable to meet her burden to "show that [s]he would have
> taken the same action in the absence of the protected activity." *Id.*
> While it may be unlikely that Thomas could prove such facts, the
> district court cannot dismiss a pro se prisoner's pleading merely
> "because the court finds the plaintiff's allegations unlikely." *Denton v.
> Hernandez,* 504 U.S. 25, 33 (1992). Accordingly, we conclude that
> Thomas adequately pleaded a claim for retaliation.

*Id.* at 442.

Subsequent decisions have characterized this language as dicta, because the district court in *Thomas* did not dismiss the plaintiff's complaint based upon the checkmate doctrine. *See, e.g.*, *Vaughn v. Robb*, No. 1:11-CV-323, 2012 WL 769481, at *6 (W.D. Mich. Feb. 17, 2012) (Report & Recommendation), *adopted by* 2012 WL 772453 (W.D. Mich. Mar. 8, 2012). Indeed, in *LaFountain v. Mikkelsen*, 478 F. App'x 989, 992 n.1 (6th Cir. 2012), the court recognized there is disagreement regarding "whether the Sixth Circuit has adopted, or should adopt, the 'checkmate rule.'"

Nevertheless, this Court is persuaded by the Sixth Circuit's dicta in *Thomas* and by the other courts that have decided against a wholesale application of the checkmate rule. *See, e.g.*, *Wagner v. Randall*, No. 13-15075, 2014 WL 4843686, at * 3 (E.D. Mich. Sept. 29, 2014); *Woods v. Smith*, 60 F.3d 1161, 1164-65 (5th Cir. 1995). In other words, where an inmate alleges that a prison official retaliated against him by filing a disciplinary report, an administrative finding that the inmate is guilty of the alleged misconduct will not act as a *per se* bar to the inmate's claim. Instead, based upon *Thomas*, the inmate may still prevail if he was singled out for punishment after engaging in protected conduct. *Thomas*, 481 F.3d at 442.

This conclusion strikes a balance between the prisoner's First Amendment right to file non-frivolous grievances and lawsuits and the prison's need "to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 468 U.S. 520, 546-47 (1979). As the Fifth Circuit warned in *Woods*, an unyielding application of the checkmate rule "would unfairly tempt corrections

officers to enrobe themselves and their colleagues in what would be an absolute shield against retaliation claims." *Woods*, 60 F.3d at 1165. Of course, courts should not "undu[ly] restrict[] . . . actions legitimately motivated by concerns of prison order and discipline." *Id.* at 1166. "Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). By placing the onus upon the prisoner to bring forth evidence demonstrating that he was treated differently and unfairly on account of his protected conduct, as *Thomas* instructs, these two competing interests are protected.

Turning to the present case, Sublett has not met his burden with respect to Defendant Sheets. To demonstrate causation, he must first "show[] that his protected conduct was a motivating factor in [Sheets'] action." *Thomas*, 481 F.3d at 441. At this juncture, Sheets argues that her disciplinary report could not have been motivated by Sublett's grievance, because she filled out her initial report on August 3, the day before Sublett filed his first grievance. But as the Court already observed, the evidence of record conflicts regarding the timing of Sheet's report, and at summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party. Furthermore, even if the Court assumed that Sheets filed her report on August 3, not August 5, her report demonstrates she knew Sublett intended to file a grievance against her. *See* [DN 48-2 at 2.]

Sheets' disciplinary report also occurred close in time to Sublett's grievance – according to Sublett, the very next day. But the Sixth Circuit cautions against "drawing an inference of causation from temporal proximity alone," and "[w]hether temporal proximity establishes an inference of retaliatory motive depends upon the totality of the circumstances." *LaFountain*, 478 F. App'x at 993 (citing *Vereecke v. Huron Valley School Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)). In *LaFountain*, the Sixth Circuit declined to infer a retaliatory motive when a prison official filed a misconduct report against the plaintiff the very same day the plaintiff engaged in protected activity. *See id.*

Most importantly, though, Sheets' disciplinary report was ultimately substantiated by the Adjustment Committee. While this fact alone does not necessarily preclude Sublett's claim against Sheets, to establish a retaliatory motive, Sublett must show that the report itself was out of the ordinary in some appreciable way. *See Thomas*, 481 F.3d at 442.

In her report, Sheets alleged that Sublett interfered with her official duties by distracting her while she dealt with another inmate. But Sublett has not shown that other inmates regularly distract guards from their official duties without consequence. He has not shown that he distracted Sheets from her duties in the past, but was not punished until after he filed a grievance against her. In sum, Sublett has not shown via affidavit, discovery responses, or otherwise that Sheets singled him out for punishment in any appreciable way. And without that showing, he cannot establish Sheets acted with a retaliatory motive – something he

must do to prevail against her. Sheets is entitled to summary judgment, and Sublett's retaliation claim against her must be dismissed.

However, Sublett has met his burden with respect to Defendant Delaney. Faced with Delaney's substantiated disciplinary report, in which she alleged Sublett was masturbating in the full view of others, Sublett has brought forth evidence tending to show that Delaney possessed a retaliatory motive. Particularly, Sublett submits the sworn declaration of fellow inmate Carlos Thurman, who corroborates the substance of Sublett's allegations regarding Sublett's interactions with Delaney. Thurman says he overheard Delaney tell Sublett she had the power to send Sublett to segregated housing – which is precisely what happened after Delaney filed her disciplinary report. *See* [DN 48-3 at 13-14.]

Sublett also relies on the declaration of Michael Cooper, who avers that Delaney regularly watches inmates, including Cooper, masturbate, but never issues disciplinary reports. *See* [DN 48-3 at 18-19.] Cooper further claims Delaney says she will only issue disciplinary reports for masturbation if, among other things, an inmate files a grievance or a PREA complaint. *See* [*id.*] While Cooper's account may seem far-fetched, on summary judgment, courts "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001)). And "the district court cannot dismiss a pro se prisoner's pleading merely 'because the court finds the

plaintiff's allegations unlikely.'" *Thomas*, 471 F.3d at 442 (quoting *Denton*, 504 U.S. at 33 (1992)).

Based upon the evidence of record, a reasonable jury could conclude Delaney acted with a retaliatory motive, despite the fact that her disciplinary report was upheld by the Adjustment Committee. Under the *Mount Healthy* burden-shifting framework, the burden then shifts to Delaney to show that she "would have taken the same action anyway even without the protected activity." *Id*. Delaney has brought forth no evidence on this point. Unlike Sheets, Delaney has not submitted an affidavit detailing her version of the events. Unlike Sublett, she has not submitted the statements of any witnesses who might testify that Delaney does not engage in voyeurism as alleged by Cooper, or that she regularly writes up inmates for inappropriate sexual activity. Delaney has not rebutted Sublett's showing of causation, and she is not entitled to summary judgment.

## B. Sublett's Motion for Summary Judgment

Sublett also moves for summary judgment against Sheets and Delaney. *See* [DN 48.] As explained in Part III.A of this opinion, even when viewing the evidence in the light most favorable to Sublett, he cannot prevail against Sheets because he brings forth no evidence showing she acted with a retaliatory motive. Sublett's motion for summary judgment against Sheets must therefore be denied as a matter of law. As to Delaney, the fact remains that her disciplinary report against Sublett was upheld by the Adjustment Committee. While this fact alone does not entitle Delaney to summary judgment, a reasonable jury could very well

find, based upon the substantiated report, Delaney did not act with a retaliatory motive. Sublett's motion for summary judgment must be denied as to Delaney as well.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED:

Plaintiff Damien Sublett's motion for summary judgment [DN 48] is DENIED. Defendants Marlene Sheets and Laura Delaney's combined motion for summary judgment [DN 58] is GRANTED IN PART and DENIED IN PART. Sublett's claims against Defendant Sheets are DISMISSED WITH PREJUDICE. Sublett's claims against Defendant Delaney may proceed to trial.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 31, 2017

CC: Counsel of Record

Plaintiff Damien Sublett, *pro se*
#134575
Western Kentucky Correctional Complex
374 New Bethel Rd.
Fredonia, KY 42411

Defendant Laura Delaney (address under seal)

Defendant Kaci Simmons (address under seal)

Regina Moore (via email)
regina.moore@ky.gov