UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00199-TBR

DAMIEN A. SUBLETT                                                                PLAINTIFF

v.

LAURA DELANEY, *et al.*                                                         DEFENDANTS

**Memorandum Opinion and Order**

This matter is before the Court upon Defendant Kaci Simmons' motion to dismiss. [DN 70.] Plaintiff Damien Sublett, *pro se*, responded, [DN 75], and Simmons replied, [DN 87]. Fully briefed, Simmons' motion is ripe for adjudication. For the following reasons, her motion is DENIED.

**I. Facts and Procedural History**

The Court summarized the facts of this case in greater detail in its previous Memorandum Opinion and Order. *See* [DN 65.] Damien Sublett is a prisoner currently housed at the Western Kentucky Correctional Complex. During a previous period of incarceration at the Kentucky State Penitentiary (KSP), he alleges Kaci Simmons, a KSP nurse, violated his Fourth Amendment bodily privacy rights by looking at his genitals while he showered. Specifically, Sublett claims that Simmons was about to conduct a pill call on his walk while Sublett was preparing to shower. [DN 8-1 at 21.] According to Sublett, "Simmon's asked the officer is he (Plaintiff) getting in the shower the officer replied yes. Nurse Simmon's then looked at Plaintiff, and said ('Showtime')." [*Id.* (sic throughout).] Simmons then began her rounds at the other end of the walk. When she reached

the end of the walk, where the shower was located, Sublett says Simmons "pushed her cart up in front of the shower in clean view of Plaintiff naked body. At this time Plaintiff still Naked in the Shower was drying his genital area with a Towel Simmon[s] stood and watch plaintiff, for a full five minutes in the Shower . . . ." [*Id.* (sic throughout).] Sublett then told Simmons her actions violated the Prison Rape Elimination Act (PREA). [*Id.* at 22.] In response, Sublett claims, Simmons threatened to issue a disciplinary report against him for masturbating. [*Id.*] Sublett further alleges Simmons engaged in similar actions on five or six other occasions. [DN 9-1 at 2-3.]

Simmons was served via certified mail on September 26, 2016. [DN 24.] However, she did not appear, answer, or otherwise defend this action until June 13, 2017, by which time Sublett had already moved for a default judgment against her. In response to the Court's show cause order, Simmons indicated that shortly after being served, she handed off Sublett's complaint to her supervisor, who indicated that she would handle the matter on Simmons' behalf. [DN 68.] The Court granted Simmons' motion to file a late answer, and afforded her an opportunity to file a motion to dismiss before this matter proceeds to trial. [DN 71.]

## II. Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Civil Rule 12(b)(6), a party must "plead enough factual matter to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship*

*v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Id.* at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677-79).

**III. Discussion**

Simmons asserts two grounds for dismissal. First, she suggests Sublett's complaint should be dismissed because he failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e. Second, Simmons contends that even if Sublett has exhausted his remedies, his complaint fails to state a violation of his Fourth Amendment rights. The Court will address each argument in turn.

A. Administrative Exhaustion

The Prison Litigation Reform Act of 1995 requires a prisoner to exhaust all available administrative remedies before filing any action "with respect to prison conditions" under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a).

3

The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *accord Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). Exhaustion is mandatory and the remedies provided "need not meet federal standards, nor must they be 'plain, speedy, or effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), and so "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion," *Jones v. Bock*, 549 U.S. 199, 218 (2007); *accord Lee v. Wiley*, 789 F.3d 673, 677 (6th Cir. 2015).

In *Jones*, the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Nevertheless, Sublett took it upon himself to note in his complaint that he filed a grievance following Simmons' alleged actions. [DN 8-1 at 22.] His grievance was ultimately denied. [*Id.*] For Defendant Simmons, this case is at the motion to dismiss stage. Courts may only grant such a motion based on an affirmative defense when "the plaintiff['s] complaint contains facts which satisfy the elements of the defendant's affirmative defense." *Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013). Here, Sublett's complaint does the opposite,

4

explaining why Simmons is *not* entitled to the affirmative defense of lack of PLRA exhaustion. This is sufficient to survive Simmons' motion.¹

B. Fourth Amendment

Sublett's sole claim against Simmons, brought under 42 U.S.C. § 1983, is for a violation of his Fourth Amendment right to privacy. "[A] convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex." *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (citations omitted). This limited right to privacy, among other things, "protects [prisoners] from being forced unnecessarily to expose their bodies to guards of the opposite sex." *Kent v. Johnson*, 821 F.2d 1220, 1226-27 (6th Cir. 1987). The court has clarified the extent of this right, stating that "a prison policy forcing prisoners to . . . be exposed to regular surveillance by officers of the opposite sex while naked-for example while in the shower or using a toilet in a cell-would provide the basis of a claim on which relief could be granted." *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004) (citing *Kent*, 821 F.3d at 1226; *Cornwell*, 963 F.2d at 917).

Prison regulations, like the ones Sublett alleges allowed Simmons to observe him showering, will be upheld if they are "reasonably related to legitimate

---

¹ Simmons argues that because Sublett attached exhibits, including copies of his rejected grievances, to his response, the Court must convert her motion to dismiss into a motion for summary judgment. It is true that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, this decision rests within the discretion of the district court, which "remains free to *refuse to accept* materials outside the pleadings." *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006) (quoting 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1371 (3d ed. 2004)). Here, mindful that the Court granted Simmons leave to file only a motion to dismiss, the Court will exclude the extraneous information and keep her motion as one to dismiss.

5

penological interests." *Cornwell*, 963 F.3d at 916 (emphasis removed) (citing *Turner v. Safely*, 482 U.S. 78, 89 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)). Courts consider several factors, including:

> (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation.

*Cornwell*, 963 F.2d at 917. A plaintiff may establish "a constitutional violation . . . [with] evidence that either the normal search policy was unconstitutional or that it was carried out in an unconstitutional manner. *Mills*, 389 F.3d at 579.

In *Kent*, the case upon which Sublett primarily relies, the plaintiff averred that his toilet and shower facilities were walled in with open bars, allowing both male and female guards to observe him naked. *Kent*, 821 F.2d at 1221-22. Further, female guards were required to visually inspect all areas of the housing unit, including the shower area. *Id.* at 1222. The Sixth Circuit reversed the district court's dismissal of the plaintiff's Fourth Amendment privacy claim. "Even applying the rational relationship standard," the court said, the plaintiff's complaint still stated a claim for relief. *Id.* at 1230 (Jones, J., on reconsideration).

Such is the case here. In pertinent part, Sublett alleges that Sublett viewed him showering pursuant to a KSP policy that requires staff to observe inmates housed in the Special Management Unit (SMU) at all times. [DN 9-1 at 1-2.] Undoubtedly, prisons have a compelling interest in ensuring the safety of both

6

inmates and staff. This interest is heightened when, as here, prison officials are dealing with inmates housed in a more secure part of the facility. Still, at the motion to dismiss stage, the Court believes there may be ways to accommodate Sublett's legitimate bodily privacy concerns without risking the safety of the KSP inmates and staff. Additionally, even if the policy itself is constitutional, Sublett's allegations suggest Simmons may have carried it out in an unconstitutional manner. *Mills*, 389 F.3d at 579. When Simmons found out she would be on the walk while Sublett was showering, he claims Simmons said, "Showtime." [DN 8-1 at 21.] Further, Sublett alleges Simmons had no reason to continue down the walk past the shower, as she had already completed her pill call and was not administering medicine to him. [DN 9-1 at 2.]

At this turn, Simmons argues that despite *Kent* and its progeny, Sublett had no reasonable expectation of privacy because he knew Simmons was on the walk and would likely see him showering. She correctly points out that Sublett says he saw Simmons before he entered the shower, thereby alerting him to a female's presence on the walk. [DN 8-1 at 22.] However, as Sublett explains in his response, showering at KSP is not optional, and inmates have only ten minutes to complete their showers. [DN 75 at 13; 22.] If Sublett showered with full knowledge Simmons might see him, then, it may be because he did not have much choice in the matter.

Along the same vein, Simmons argues she is entitled to qualified immunity. "The doctrine of qualified immunity provides that 'government officials performing

7

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mills*, 389 F.3d at 576 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800. 818 (1982)). In *Mills*, the plaintiff alleged that during a strip search conducted by female jailers, a male jailer walked by and observed her naked. *Id.* at 572. The Sixth Circuit stated that if the male jailer "planned or intended to see [the plaintiff] during the search, he would not be entitled to qualified immunity." *Id.* at 579. Ultimately, the court concluded that plaintiff brought forth insufficient evidence of such intent to survive summary judgment. *Id.* at 579-80.

Here, unlike the plaintiff in *Mills*, Sublett has the benefit of the more lenient Rule 12(b)(6) standard. Additionally, Sublett alleges Simmons made the aforementioned "showtime" comment, and left the side of her escorting officer specifically to observe Sublett showering. If proven true, these facts would tend to show Simmons did intend to violate Sublett's privacy. At this stage, the Court cannot say with any conviction that Simmons is entitled to qualified immunity.

## III. Conclusion

Sublett's claims may seem far-fetched. Indeed, as Simmons notes in her reply, Sublett seems to have a history of making similar allegations against female prison officials. But Sublett has the right to have each case decided on its own merits, and here, his complaint states a claim upon which relief may be granted. Accordingly, IT IS HEREBY ORDERED:

Defendant Kaci Simmons' motion to dismiss [DN 70] is DENIED.

CC: Counsel of Record
Plaintiff, *pro se*